Drake, Oh. J.,
delivered-the opinion of the court:
In the years 1877, 1878, 1879, and 1880, the Fifth Regimem of United States Infantry was on duty in Montana Territory, and the claimant was a first lieutenant therein.
On the 1st ot November, 1877, the colonel of that regiment wrote the following letter:
*133 “Headquarters Fifth Infantry,
“Cantonment at Tongue River, M. T., November 1st, 1877.
“To tbe Assistant Adjutant-General,

“Headquarters Department of Dalcota, Saint Raul, Minn.:

“ Sir : I have the honor to invite the attention of the higher authorities to the fact that, during the different campaigns and engagements against the hostile Sioux and Nes Percés in which my regiment has participated, there have been captured about 1,200 ponies, horses, and mules.
“ Out of this number I have enough stout war ponies to mount my entire regiment, and during the recent campaign against the Nez Percés have used a battalion as mounted infantry with the most gratifying results. The advantages are these: they require little or no forage; they will make long marches on grass alone; are not as much cut down by the alcali water as American horses; are not afraid of Indians, and in action pay no attention to the noises and excitement of the engagement. Every man is available in line, and, in my opinion, the force is more effective for our kind of service than either cavalry or infantry as now used.
“As the mount has cost the government nothing, I would be pleased to have the regiment considered as mounted infantry; and therefore ask the approval of the higher military authorities, and of the President, if such approval be necessary.
“I am, sir, very respectfully, your obedient servant,
“Nelson A. Miles,
“ Colonel 5th Infantry.
This letter was forwarded by Brigadier-General Terry, commanding the Department of Dakota, to Lieutenant-General Sheridan, commanding the Military Division of the Missouri, with this endorsement:
“Headquarters Dep’t of Dakota,
“ Saint Paul, Minn., Nov. 24, 1877.
“ Respectfully forwarded to Headquarters Military Division of the Missouri, approved and strongly recommended. I concur in all the reasons given by General Miles for mounting his regiment. Owing to the superiority of the arms of the infantry and to the fact thatthe ponies in question require no ‘ horse-holders ’ when in action, I believe that the regiment if mounted will be able to render more efficient service against Indians than an equal number of men from any of the cavalry regiments. The expense involved is trifling, being only the wear of horse equipments and the cost of a little forage.
“Alfred H. Terry,
“ Brigadier- General, Commanding P
*134 Lieutenant-General Sheridan forwarded the letter to the Adjutant-General of the Army with this indorsement:
" In the present exigency of the service I strongly recommend that Colonel Miles’s request be granted.”
The letter, with those indorsements, was submitted by General Sherman to the Secretary of War, approved, and the Secretary also approved it; and the Adjutant General of the Army transmitted to the Lieutenant-General the following letter:
“Headquarters oe The Army,
“ Adjutant-General’s Oefice,
“ Washington, Bee. 12, 1877.-
“To the COMMANDING- GENERAL,
“Military Division oe the Missouri, Chicago:
“Sir; Eeferring to your endorsement of the 27 th ultimo upon communication from Colonel N. A. Miles, 5th Infantry, I have the honor to inform you that the request of Colonel Miles for authority to mount his regiment out of the number of war ponies . captured during the different campaigns and engagements against the hostile Sioux and Eez P erees has been approved by the General of the Army and the Secretary of War.
“ I am, sir, very respectfully, your obedient servant,
“E. D. Townsend,
“ Adjutant-General.”
This letter is the authorized and complete statement of what the Secretary of War did. He merely approved Colonel Miles’s request — nothing more. In pursuance of that approval the regiment was mounted on the Indian war ponies, and continued to be so till August 29, 1880. For two years, seven months, and seventeen days prior to that date the claimant was so mounted; and for that period he received pay as a first lieutenant of infantry.
He now claims that he was legally entitled to the greater pay of a first lieutenant of cavalry, and he sues for the difference between the two rates of pay during that period.
Those rates are prescribed in section 1261 of the Revised Statutes, thus:
“ First lieutenant, mounted, $1,600 a year.
“ First lieutenant, not mounted, $1,500 a year.”
These words would seem prima facie to give color to the claim now made; but there are other provisions of law and Army Regulations which bear on the question and must be examined.
*135 By tbe act of February 12, 1877, “ to perfect the revision of the statutes,” &c., (19 Stat. L., 240, cb. 19; Supplmt. R. S., 268), there was added to section 1270 of the Revised Statutes & proviso in these words:
" Provided further.,That officers of the Army, and of volunteers, assigned to duty which requires them tobe mounted, shall, during the time they are employed oft such duty, receive the pay, emoluments and allowances of cavalry officers of the same grade respectively.”
It is upon this provision that the claimant relies to establish his demand. He contends that he was assigned to a duty which required him to be mounted, and that while employed on that duty he was entitled to the pay of a first lieutenant of cavalry. Here again the words might seem, to give color to his view, but on looking into the Army Regulations we find matter which we conceive to have a material bearing on this point.
■ The question is, whether the claimant was, in fact, assigned to a duty which required him to be mounted.
If, in pursuance of an order from the War Department, his company had been mounted as cavalry, that would have been an assign ment of its officers t o a duty requiring them to be mounted; and as they would thereby have fallen under all the obligations of, and been subjected to all the expenses incident to, a cavalry mount, they would have been entitled to cavalry pay; but no such order was made by the Secretary, nor did Colonel Miles ask to have his force mounted as cavalry. On the contrary, he seems to have been desirous to avoid the appearance of such a request. He spoke in his letter of having “ already used a battalion as mounted, infantry with most gratifying results,” and said that such a “ force is more effective for our kind of service than either cavalry or infantry as now used.” This excludes the thought of his force being converted into cavalry; and his letter ends with these words : “As the mount has cost the government nothing, I would be pleased to have the regiment considered as mounted infantry, and therefore ask the approval of the higher military authorities.”
It was this proposal that General Terry forwarded “ approved and strongly recommended,” because he believed “that the regiment, if mounted, would be able to render more efficient service against Indians than an equal number of men from any of the cavalry regiments,” and because “the expense involved is trifling, being only the wear of horse equipments and the cost of *136 a little forage.” This proposal was simply approved by the Secretary of War j and under that approval Colonel Miles mounted his regiment on the captured ponies. Of course, the claimant was mounted with all the rest; but was he thereby assigned to a duty which required him to be mounted 1 Let us see.
In the first place, there is nothing showing that his duty was changed. He was still an officer of infantry, with no change whatever but that connected with locomotion. Instead of marching on foot, he rode a pony; and presumably he found the change convenient.
In the next place, he was not required to be mounted, in the sense of the statute, for that would have made it necessary for him to furnish, at his otvn expense, his own horse, saddle, bridle, saber, pistols, spurs, and other equipments; when, in fact, the government furnished him the horse, saddle, and bridle, and he was mounted, so far as appears, with no other equipment than that of an infantry officer.
The conclusion then is that he was not assigned to a duty which required him to be mounted, in such sense as to entitle him to increased pay. The greater pay of a cavalry officer is allowed in consideration of his being obliged to buy his own horse and equipments; and as the claimant did not have to buy either, he cannot urge that he ought, in justice, to have the increased pay.
There is another matter which reinforces this conclusion. The Army Begulations seem to define the cases in which mounted officers are, as such, entitled to mounted pay. Paragraph 2385 of those regulations says:
“The following officers, in addition to those whose pay is. fixed by law (B. S., § 1261), are entitled to pay as mounted officers: Officers of the staff corps below the rank of major; officers of troops of cavalry; officers of one light battery for each regiment of artillery; officers announced in orders from the Adjutant-G-eneral’s Office as acting signal officers, and authorized aides-de-camp duly appointed as such.”.
This enumeration of officers entitled to mounted pay, in the absence of anything adverse in the Begulations, would exclude the claimant. But there is another clause in that paragraph which seems to have a bearing here, and is in these words:
“ Officers actually serving with companies of infantry mounted by authority of the War Department, and not in excess of tue legal organization of infantry, are mounted while so serving.”
*137 That tbe claimant served with a “company of infantry mounted ” is not contested.
That tlie Secretary of War permitted tbe company to be mounted is clear.
That the claimant’s company was not in excess of tSe legal organization of infantry is equally clear.
Why, then, it may be asked, is he not entitled to mounted pay ? Simply because tbe permission given by tbe Secretary is to be construed and enforced by its own terms; and the terms on which it was granted were those stated in the letter of Colonel Miles, and the indorsement thereon of General Terry, which indicated clearly that no additional expense to the government was to result from mounting the regiment, except “the wear of horse equipments and the cost of a little forage,”
Furthermore, in our opinion, the words “authority of the War Department,” in that clause, are to be construed, not in the limited sense of permission, but in the higher sense of an order requiring the thing to be done, and imposing on officers all the duties, obligations, and expenses incident to such an order. The Secretary’s approval of Colonel Miles’s request was, beyond doubt, the “authority of the War Department” for the pony-mount; but only a permissive authority, imparting no obligation to make the mount. It was still in the colonel’s discretion to avail himself, or not, of the permission. To entitle the claimant to mounted pay, an order of the War Department to mount his company was necessary. We can conceive that there might be circumstances in which a permission by the department to mount a regiment or a company of infantry would be construed as equivalent to an order. In such a case, if the colonel of the regiment ordered a company to mount as cavalry, it might authorize cavalry pay. But that is not at all the case now in hand. The question under this clause of paragraph 2385 is simply whether, either directly or constructively, there was any order at all from the War Department. In our opinion there was not; and therefore that the claimant’s demand for mounted pay, so far as it rests on that clause, is not sustainable.
The judgment of the court is that the claimant’s petition be dismissed.